**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

**Plaintiff,**

**v.**

**BENIHANA NATIONAL CORP.,**

**Respondent.**

**CIVIL ACTION NO. 1:26-CV-706-TWT-CCB**

# ORDER

This matter is before the Court for consideration of the application of the Equal Employment Opportunity Commission (the EEOC) for an order to show cause why an administrative subpoena (Subpoena No. AT-25-035) should not be enforced. (Doc. 1). On December 31, 2025, the Court ordered Respondent Benihana National Corp. to respond to the application, (Doc. 2), and Respondent filed its answer and opposition on February 5, 2026, (Doc. 4). The EEOC then moved for leave to file a reply and submitted its proposed reply brief. (Doc. 5; Doc. 5-1). For

the reasons set forth below, the Court **GRANTS** the motion for an order to show cause, (Doc. 1), and **ORDERS** Respondent to comply with the subpoena.[1]

## I. Background

On April 17, 2024, Cameo L. Kirkland filed a charge with the EEOC against her former employer, Benihana, alleging that she was terminated as a result of sex discrimination and retaliation under Title VII, and disability discrimination under the ADA. (Doc. 1-1 at 1–2). In an amended charge filed on April 29, 2024, Kirkland alleged that she was a person with a known disability and had begun working at Benihana in 2012. (Doc. 4-2 at 1). In August 2023, after attending a concert with "TS Madison, Transgender Advocate," pictures of which Kirkland posted on social media, Kirkland was told by a Benihana manager that she "should not hang around people like that." *Id.* A few days later, Kirkland sought work verification forms from another manager, at which point a server/bartender named Joy remarked, "I wish I could play crazy too so I could get a check." *Id.* Joy then proceeded to imitate Kirkland's disability with "shaking gestures." *Id.* Kirkland

[1] Additionally, the Court **GRANTS** the EEOC's motion for leave to file a reply, (Doc. 5), which Respondent did not respond to, and which is therefore deemed unopposed. LR 7.1(B), NDGa.

became upset and went outside until Joy came out to inform Kirkland that the managers were threatening to "discharge" Kirkland if she didn't return. *Id.* Kirkland was ultimately sent home for "making a big deal" out of Joy's behavior. *Id.* Later that day, Kirkland's sister emailed Respondent's corporate office to complain about the day's events, but no action was taken. *Id.* On September 2, 2023, Kirkland herself complained to the corporate office about Joy's behavior and also had an "episode" at work but was forced to keep working. *Id.* at 1-2. Kirkland was terminated on November 2, 2023, purportedly for failing to complete required training modules. *Id.* at 2.

The EEOC issued an initial request for information on July 9, 2024, to which Respondent responded along with a position statement on July 26, 2024, in which Respondent denied Kirkland's allegations. (Doc. 1-2 at 3–4). In the position statement, Respondent asserted that Kirkland was terminated because she failed to complete mandatory training modules despite repeated reminders and warnings that failure to do so would result in termination. (Doc. 4-1 at 1, 4-6). And Respondent represented that Kirkland "was not the only Restaurant employee" who failed to complete the training and that eight other employees in "the Atlanta market" were terminated for the same reason. *Id.* at 1, 6. In its response to the

request for information, Respondent identified, by employee-identification number, eight employees whom it described as having been "discharged for the same reason as Charging Party." (Doc. 4-8 at 3).

On August 6, 2024, the EEOC issued a second request for information, seeking, among other things, the names, sex, job titles, known disabilities, last-known contact information, dates of discharge, and reasons for discharge of the employees Respondent had identified, as well as their personnel files. *Id.* Respondent responded to the second request on September 3, 2024. *Id.* Although it provided the information requested in three of the EEOC's five requests, Respondent refused to provide the information concerning the other terminated employees or their personnel files, contending that the information was irrelevant, confidential, and sensitive. (Doc. 4-3 at 1-2; Doc. 4-8 at 3-4).

As a result, the EEOC issued Subpoena No. AT-25-025 on February 24, 2025. (Doc. 4-4 at 1). The subpoena required Respondent to identify employees discharged for the same or similar reason as Kirkland and provide specified information about them, and to produce the complete personnel file of each employee identified, including disciplinary records and separation notices. *Id.* Respondent filed a petition to revoke that subpoena on March 3, 2025, arguing that

the requested information was irrelevant and overbroad and that its production would invade the privacy of nonparty employees. (Doc. 4-5). In response to Respondent's objections, the EEOC withdrew the first subpoena and, on April 14, 2025, issued Subpoena No. AT-25-035—the subpoena at issue here—which narrowed the scope of the requests. (Doc. 4 at 8; Doc. 4-6 at 1).

Request No. 1 of the subpoena seeks the name, sex, job title, known disability, last-known address and telephone number, date of discharge, and reason for discharge of each employee in Respondent's Atlanta market who was discharged for the same or a similar reason as Kirkland between January 1 and December 31, 2023. (Doc. 4-6 at 1). Request No. 2 seeks the complete personnel files of the employees identified in response to Request No. 1, including disciplinary records and separation notices. *Id.*

Respondent filed a second petition to revoke on April 22, 2025, generally reiterating the same objections it had raised to the first subpoena. (Doc. 4-7 at 1–5; Doc. 4-8 at 5). The EEOC denied that petition and directed Respondent to produce the subpoenaed information within thirty days of receiving its determination. (Doc. 4-8 at 9). In doing so, the EEOC concluded that the requested information was relevant because Respondent itself had relied on the termination of eight other

Atlanta employees for the same asserted reason as support for its explanation of Kirkland's termination. *Id.* at 7–8. The EEOC further rejected Respondent's overbreadth and confidentiality objections. *Id.* at 8–9.

Respondent again reiterated its objections, (Doc. 4 at 9), and on December 23, 2025, the EEOC filed the present application for an order to show cause why an administrative subpoena should not be enforced. (Doc. 1). On December 31, 2025, the Court ordered Respondent to respond to the application within thirty days of service. (Doc. 2). Respondent was served on January 6, 2026, (Doc. 3), and filed its answer and opposition on February 5, 2026, (Doc. 4). The EEOC then moved for leave to file a reply and submitted its proposed reply brief. (Doc. 5; Doc. 5-1). The matter is now ripe for resolution.

## II. Discussion

The scope of the EEOC's investigative authority under Title VII is defined by 42 U.S.C. § 2000e-8(a), which grants the EEOC the right to access and copy "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." When an employer does not voluntarily comply, the EEOC is authorized to issue subpoenas and to seek court enforcement. *See* 42

U.S.C. § 2000e-9 (incorporating the subpoena issuance and enforcement mechanisms of the National Labor Relations Act, specifically 29 U.S.C. § 161). A subpoena must describe with sufficient particularity the evidence whose production is required, and the EEOC must revoke a subpoena upon petition if the evidence sought does not relate to any matter under investigation. *E.E.O.C. v. Eberspaecher N. Am. Inc.*, 67 F.4th 1124, 1131–32 (11th Cir. 2023). The ADA incorporates Title VII's enforcement powers, remedies, and procedures, including the EEOC's investigative and subpoena authority. *Id* at 1131.

"If the charge is valid and the material requested relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is too indefinite, has been issued for an illegitimate purpose, or is unduly burdensome." *Id.* at 1132. "Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the [EEOC] access to virtually any material that might cast light on the allegations against the employer." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984). However, a court "must be careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity." *Id.* at 69.

Here, Respondent does not argue that the charge is not valid, or that the subpoena is indefinite or issued for an illegitimate purpose. Rather, it contends that Request No. 1 is irrelevant to the EEOC's investigation, and that Request No. 2 is both irrelevant and overbroad. (Doc. 4). As to Request No. 1, Respondent claims that information about the employees terminated "for the same or similar reason" as Ms. Kirkland in 2023 is irrelevant because those employees could not serve as similarly situated comparators for purposes of presenting a prima facie case of employment discrimination, and because comparators are irrelevant to a retaliation claim. *Id.* at 12-15. As to Request No. 2, Respondent contends that it should not be required to produce those employees' entire personnel files because (1) the files contain no medical or disability-related information; (2) Respondent does not track an employee's sexual orientation; (3) the files contain "confidential, sensitive employee information," and (4) the Request asks for "separation notices," which Respondent "does not utilize." *Id.* at 15-16.[2]

---

[2] Respondent also argues that the subpoena should not be enforced because "it is unclear" whether the EEOC resolved its petition to revoke in accordance with 29 C.F.R. § 1601.16. (Doc. 4 at 9-10). Section 1601.16(b)(2) provides that, "[w]ithin eight calendar days after receipt or *as soon as practicable*," the General Counsel or Director must either grant the petition in its entirety or "make a proposed determination on the petition" and submit it to the EEOC for review and final

In reply, the EEOC argues that the information sought is plainly relevant because it goes directly to Respondent's purported proof that it terminated Ms. Kirkland for nondiscriminatory reasons: namely, Respondent's claim that she was merely one of eight employees terminated for not completing the training modules. (Doc. 5-1 at 4–5). The information would allow the EEOC to contact those employees to hear their own accounts of the circumstances surrounding their termination, which in turn would help the EEOC determine whether Respondent's proffered reason for termination is pretextual. *Id.* And, per the EEOC, the same rationale supports Request No. 2. Personnel files could include disciplinary records, performance reviews, and documents about the training modules and

determination. 29 C.F.R. § 1601.16(b)(2). The regulation thus does not require the EEOC itself to issue its final determination within eight days. Nor does it impose an inflexible eight-day deadline on the Director; by its terms, the required action may instead occur "as soon as practicable." *Id.* Respondent has therefore not shown that the timing of the EEOC's determination provides any basis to deny enforcement of the subpoena. And even assuming some procedural irregularity occurred, Respondent identifies no prejudice resulting from the delay or authority suggesting that such a delay strips the EEOC of its statutory subpoena authority. *See Bostic v. Lauragina Pro. Transp., LLC*, No. CV 414-083, 2015 WL 3650731, at *6 (S.D. Ga. June 5, 2015) (holding that "[w]hen an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action" (internal quotation marks omitted)).

whether they were completed. *Id.* at 6–7. Additionally, the employees are potential witnesses, and, according to the EEOC, the documents will help in assessing their credibility. *Id.*

The Court agrees with the EEOC. Indeed, the Court is somewhat baffled by Respondent's argument. Respondent has expressly relied on the termination of these other eight employees as evidence that Kirkland was not singled out for discriminatory treatment. But now, it argues that information concerning those employees could not possibly shed light on whether or not Kirkland was indeed terminated for that reason. Respondent cannot have it both ways. Having placed those other terminations at issue in support of its explanation, Respondent can hardly contend that the EEOC has no legitimate investigative interest in determining whether those terminations occurred as Respondent claims they did. In arguing that the eight employees could not serve as comparators, Respondent acts as if the case were already at the point of summary judgment and the EEOC were obliged to satisfy a comparator framework. But, in the first place, even at summary judgment, a comparator is not always necessary. *See Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) (noting that a plaintiff "will always survive summary judgment if he presents circumstantial evidence that creates a triable

issue concerning the employer's discriminatory intent" (internal quotation marks omitted)). And more importantly, we are not at summary judgment. Even assuming comparators were needed at some point in some litigation down the line, and even assuming the eight employees could not serve as comparators, that certainly does not mean that evidence about them is irrelevant to the investigation.

This is not a case in which the EEOC seeks information about other employees merely to explore whether Respondent may have committed additional violations against people who have not filed charges. *Cf. Eberspaecher*, 67 F.4th at 1132-37 (holding that nationwide employee data was not relevant to the EEOC's investigation of a particular facility). Again, Respondent itself invoked these other terminations as evidence in support of the termination at issue *here*. The EEOC is thus entitled to find out what actually happened with those terminations, and in so doing, it may look for evidence that might support Respondent's defense, contradict it, or reveal that the factual predicate of the defense is more complicated than Respondent says it is. Whatever the outer bounds of relevance are, this is not anywhere close. *See E.E.O.C. v. McLane Co., Inc.*, 857 F.3d 813, 815 (9th Cir. 2017) (directing enforcement of a subpoena for names, Social Security numbers, addresses, and telephone numbers of employees who

had taken a physical strength test, where that information "might cast light" on sex discrimination allegations, "whether positively or negatively"); *E.E.O.C. v. Sinclair*, No. 23-23547-CIV, 2024 WL 3970874, at *5 (S.D. Fla. Aug. 9, 2024) (enforcing a subpoena that requested, among other things, "a list of Respondents' employees, their employment dates, and contact information"), *adopted by* 2024 WL 3965713 (S.D. Fla. Aug. 28, 2024).

The Court takes Respondent's point, as to Request No. 2, that an employee's entire personnel file might contain "confidential, sensitive employee information," including "onboarding documentation, direct deposit information, emergency contacts, etc." (Doc. 4 at 16). However, when it comes to an EEOC subpoena, "confidentiality is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination." *E.E.O.C. v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981). The Court will therefore enforce Request No. 2 as written.

Respondent's additional objections are easily disposed of. If Respondent has no medical or disability-related information, the subpoena does not require it to manufacture it. And the objection that Respondent does not track sexual

orientation is especially beside the point, because Request No. 1 asks for "sex" and "disability (if known)," not sexual orientation.[3]

## III. Conclusion

The EEOC's application for an order to show cause why an administrative subpoena should not be enforced, (Doc. 1), is **GRANTED**. Respondent is **ORDERED** to comply with Subpoena No. AT-25-035. Finally, the EEOC's motion for leave to file a reply brief, (Doc. 5), is **GRANTED**.

**IT IS SO ORDERED,** this 28th day of August, 2026.

CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

[3] Additionally, although Respondent claims that it cannot produce separation notices because it does not "utilize" them, (Doc. 4 at 16), the EEOC points out that such notices are required by Georgia law. (Doc. 5-1 at 6 n.7); *see* O.C.G.A. § 34-8-190(c) (providing that "[e]ach employer shall furnish to each employee a separation notice at such time as the employee leaves the employment of the employer," and that such a notice "shall contain detailed reasons for the employee's separation"). Regardless, the Court cannot order Respondent to produce documents that apparently do not exist. If they do exist, they should be produced.